Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
Melissa D. Hill
melissa.hill@morganlewis.com
101 Park Avenue
New York, New York 10178
(212) 309-6318 (Telephone)
(212) 309-6001 (Fax)

Sarah E. Bouchard *(Pro Hac Vice)*
1701 Market Street
Philadelphia, PA  19103
(215) 963-5077 (Telephone)
(215) 963-5001 (Fax)
sbouchard@morganlewis.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARAT GOKHBERG, YURY GOKHBERG, DAVID JAFFE, SUREKHA BASSI, and MARC FRANCHI,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC. and PNC BANK, N.A.,<br><br>    Defendants. | **Case No.:  1:15-cv-06001-LTS**<br><br>**Document Filed Electronically**<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE**
<u>**WESTERN DISTRICT OF PENNSYLVANIA PURSUANT TO 28 U.S.C. § 1404(a)**</u>

I.   **INTRODUCTION**

PNC[1] demonstrated in its opening brief that this case should be transferred to the Western District of Pennsylvania. Well-established case law from the Supreme Court and other courts have held that litigating substantially similar cases in different forums is precisely the type of judicial inefficiency that 28 U.S.C. § 1404(a) is meant to prevent. Similarly, PNC demonstrated that the location of operative facts and the convenience of witnesses and parties weigh in favor of transfer. Only one of the Plaintiffs and less than 1% of the proposed nationwide collective action worked in this District. In contrast, PNC is headquartered in the Western District of Pennsylvania and many potential key witnesses are located in or near Pittsburgh.

Plaintiffs attempt to avoid transfer by raising unsupported factual allegations about the purported convenience of litigating in New York as opposed to Pittsburgh, and by mischaracterizing or ignoring the case law cited by PNC in its opening brief. For the reasons explained in PNC's opening brief as well as below, PNC respectfully requests that this case be transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).[2]

II.   **ARGUMENT**

    A.   **The First-to-File Rule Does Not Preclude Or Weigh Against Transferring This Case To the Western District of Pennsylvania.**

Plaintiffs concede that the Bland matter is substantially similar to the present case and that "courts favor consolidation to promote judicial efficiency," but they argue that the first-to-file rule favors keeping the case in this District. Pls' Br. at 6. However, the case law Plaintiffs

---

[1]   All capitalized terms used herein shall have the same meaning ascribed to them in Defendants' opening brief. See Defs' Br., Dkt. No. 21.

[2]   As an initial matter, Plaintiffs appear to criticize PNC for filing a motion to transfer venue under Section 1404(a) as opposed to Section 1406(a) as mentioned in the Court's Order to Show Cause. Pls' Br., Dkt. No. 25 at 2. However, PNC simply requested an opportunity to file a submission regarding venue in connection with the Court's Order to Show Cause. See PNC's September 3, 2015 Ltr. to the Court, Dkt. No. 3. There is nothing improper about this motion.

cite does not support this argument. Plaintiffs' selective citation to a quote from <u>Williams v. City of New York</u>, No. 03 CIV. 5342, 2006 WL 399456 (S.D.N.Y. Feb. 16, 2006), is particularly misleading. There, the court transferred the first-filed case to the second-filed forum because the balance of conveniences under Section 1404(a) favored transfer. <u>Id.</u> at *4. The <u>Williams</u> court specifically held that the "the first-filed doctrine does not supersede the inquiry into the balance of convenience required under § 1404," and that "a transfer justified under § 1404(a) is proper even if the action to be transferred was filed before a related action was filed in the transferee district." <u>Id.</u> Moreover, other courts in this jurisdiction similarly have held that the first-to-file rule does not preclude or weigh against transferring the first-filed case to the second-filed forum. <u>See</u> Defs' Br. at 7 (collecting cases where courts transferred first-filed case to second-filed forum). Notably, Plaintiffs do not attempt to address or distinguish the other cases cited by PNC on this issue.

Plaintiffs also failed to cite to any case law holding that the first-to-file rule precludes or weighs against transfer of the first-filed case, nor could they.[3] Rather, as explained in PNC's opening brief, the case law is clear that the filing order of the actions is irrelevant to Section 1404(a) analysis.[4] <u>See</u> Defs' Br. at 7-8.

---

3    As noted by Plaintiffs' case, <u>Chavez v. Dole Food Co.</u>, 796 F.3d 261, 264-70 (3d Cir. 2015), "the principal reason for the first-filed rule is the avoidance of duplicative litigation." <u>Id.</u> at 269. (affirming dismissal of a second-file case). Thus, from a policy standpoint, applying the first-to-file rule to preclude or disfavor transfer of a duplicative lawsuit would run afoul of the underlying purpose of the rule.

4    Moreover, even if the first-to-file rule had some bearing on this analysis (which it does not), courts have held that "where suits are filed in quick succession and/or the court with the first filed action has done little with respect to it, the [first-to-file] rule carries less weight." <u>See, e.g.</u>, <u>Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 489 (S.D.N.Y. 2007) <u>aff'd sub nom.</u> <u>New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.</u>, 599 F.3d 102 (2d Cir. 2010). Here, PNC is seeking to transfer venue to a more convenient jurisdiction where a substantially similar case was filed a few days after this case. The relatively short amount of time between the Bland matter and this case would negate any impact of the first filing.

### B. Plaintiffs Are Subject To The Same Forum Selection Clause Cited In The *Bland* Complaint.

After incorrectly asserting that the first-to-file rule supports their position, Plaintiffs proceed to accuse PNC of concealing the fact that the Bland Plaintiffs claim to be subject to a forum selection clause mandating litigation in the Western District of Pennsylvania. Pls' Br. at 8-9. Plaintiffs speculate that PNC chose not to mention this portion of the Bland complaint "because Plaintiffs' contracts with Defendants do not include any comparable provisions." Id. But Plaintiffs are simply wrong on this point. Plaintiffs *did* receive an agreement with the same forum selection clause referenced by the Bland Plaintiffs. See Supp. Decl. of Sarah E. Bouchard at Ex. A ("Seibel Decl.") ¶ 4; see also Seibel Decl. Ex. 1 (agreements signed and/or received by Plaintiffs).

PNC chose not to raise these contractual provisions as a basis for transfer in its opening brief because the forum selection clauses arise from Non-Solicitation/No-Hire/Confidentiality agreements, and not broader employment agreements. However, if the Bland Plaintiffs are correct and the forum selection clauses are more broadly applied to this litigation, any impact those clauses have on venue would apply equally to Plaintiffs and would form another basis for transfer here.[5]

---

[5] Plaintiffs raise a similarly unpersuasive argument that PNC's reference to the 17 opt-in plaintiffs who already have joined Bland somehow is negated by PNC's assertion that this District contains only 17 MLOs out of a potential class of approximately 2,300 MLOs. Pls' Br. at 7. But again, Plaintiffs miss the point. The fact that 17 opt-in plaintiffs already have joined Bland this early in the case, whereas no one has joined this action, suggests more of an interest in the Bland litigation. On the other hand, the limited number of MLOs who have worked or resided in the Southern District of New York further demonstrates that this District is the less convenient forum for this collective action. These are two different issues, both of which weigh in favor of transferring this case to the Western District of Pennsylvania.

### C. The Western District Of Pennsylvania Is The Far More Convenient And Efficient Forum For This Action Under Section 1404(a).

Tellingly, Plaintiffs do not even attempt to dispute that many of the key Section 1404(a) factors favor transfer, including the interests of judicial efficiency and the interests of justice, the convenience of key witnesses, the locus of operative facts, the ability to compel unwilling witnesses, and the forum's familiarity with the governing law. Thus, it is undisputed that all of these factors weigh in favor of transfer.

Instead, Plaintiffs incorrectly argue that the Court should focus on the "central criterion" of the location, convenience and relative means of the parties, as well as Plaintiffs' choice of forum. Plaintiffs' position ignores the clear case law establishing that these criteria are determinatively outweighed when 1) substantially similar litigation exists in the transferee forum, and 2) the plaintiffs choose to file their claims as a nationwide collective action. See Defs' Br. at 6-14. Moreover, for the reasons explained below, Plaintiffs' arguments concerning each of these criteria are unavailing.

#### 1. The Convenience Of The Parties Heavily Favors Transfer.

As explained in PNC's opening brief, litigating in Pittsburgh would be most convenient for a significant majority of the potential collective action. See Defs' Br. at 6-12. In an attempt to deflect the fact that less than 1% of the proposed collective action has worked in the Southern District of New York, Plaintiffs claim – without citing to any sources – that less than 3% of PNC's branches are located in Pittsburgh. The number of branches, however, is largely irrelevant, as many MLOs work in offices located outside of PNC Bank's retail branch footprint. See Seibel Decl. ¶ 3.

Moreover, further examination of the location of the putative collective action members reveals that the Western District of Pennsylvania is more centrally located and convenient for the

majority of putative collective action members. Of the approximately 2,300 MLOs in Plaintiffs' purported collective action, approximately 1,350 MLOs (60%) worked in locations that are closer to Pittsburgh than New York. See Seibel Decl. ¶ 5 (approximately 1,350 MLOs worked in CA, IL, IN, KY, KS, MI, MO, MT, OH, OR, TN, WI, WA, WV, TX, and Western PA). In contrast, only approximately 470 MLOs (20%) worked in locations on the "East Coast" that are closer to New York than Pittsburgh. See id. (approximately 470 MLOs in the proposed collective action worked in CT, DC, DE, MA, MD, NH, NJ, NY, and Eastern PA). Thus, the Western District of Pennsylvania is the more centrally located and convenient forum for the majority of the collective action members, which strongly supports transfer.[6] Dacar v. Saybolt LP, No. 10-CV-12-F, 2011 WL 223877, at *5 (E.D.N.C. Jan. 24, 2011) (holding that Texas would be the more convenient location for the putative class because it is "more centrally located in the United States"); Ingram v. Family Dollar Stores of Ala., Inc., No. CV-06-BE-1507-S, 2006 WL 7132701, at *2 (N.D. Ala. Sept. 29, 2006) (noting that the presence of defendant's employees throughout the country may make plaintiff's choice of forum inconvenient for the "vast majority of potential plaintiffs").

---

[6] Plaintiffs also claim (again with no citation to sources) that New York is more convenient because of the "relatively inexpensive modes of transportation available every day, multiple times per day. . . . [and because] a number of highways run through New York City, as opposed to Pittsburgh, whose main access route is Interstate 76." Pls' Br. at 6. In doing so, Plaintiffs imply that Pittsburgh's public transportation and/or access routes are somehow inadequate, but this implication is false. See, e.g., Visit Pittsburgh: Transportation (last visited on Sept. 18, 2015) http://www.visitpittsburgh.com/plan-your-trip/transportation/ ("Pittsburgh is within 500 miles of more than half the U.S. population and less than a 90-minute flight from 50% of North America's population" and also describing readily available public transportation, including many interstate highways and a train station). Furthermore, according to Bloomberg, the average hotel cost for New York is $233 per night, making it the tenth most expensive city in the world for that category. See World Hotel Index (last visited on Sept. 18, 2015) http://www.bloomberg.com/visual-data/best-and-worst//world-hotel-index-cities. Notably, Pittsburgh is not on that list and would be a much more affordable option for both parties and witnesses needing temporary accommodations for trial and/or depositions.

### 2. *Plaintiffs Have Not Met Their Burden To Show That The Relative Means Of The Parties Weigh Against Transfer.*

Plaintiffs argue that the relative means of the parties is a consideration that weighs against transferring to the Western District of Pennsylvania. While the relative means is one factor to be considered under Section 1404(a), courts in this jurisdiction, including all of those cited by Plaintiffs on this issue, have held that "[a] party arguing *for or against* transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Pecorino v. Vutec Corp., 934 F. Supp. 2d 422, 439 (E.D.N.Y. 2012) (emphasis in original); see also Bassali v. Johnson Controls, Inc., No. 06-4149-KMW, 2007 U.S. LEXIS 95143, at *12 (S.D.N.Y. Dec. 20, 2007) (***granting motion to transfer*** where plaintiff only made unsupported assertions about his financial means as an individual versus defendant's means as a corporation without providing "any evidence of his 'limited financial means'"); KPMG Consulting, Inc. v. LSQ II, LLC, No. 01 CIV. 11422 (SAS), 2002 WL 1543907, at *4 (S.D.N.Y. July 12, 2002) (***granting motion to transfer*** and holding that "[b]ecause no evidence as to relative means has been provided, this factor is neutral").[7] Thus, under the case law cited by Plaintiffs, they have failed to meet their burden to establish financial burden, and the relative means of the parties does ***not*** weigh against transfer.

### 3. *The Court Should Not Defer To Plaintiffs' Choice Of Forum.*

Plaintiffs claim that PNC has provided "no support" for its assertions that Plaintiffs are forum-shopping. Pls' Br. at 8. Yet, as PNC previously noted, Plaintiffs filed in this District even though all of them reside in the Eastern District of New York and only one of them worked here for a short portion of his employment. This decision -- in and of itself -- strongly suggests that

---

[7] LSQ II also is noteworthy because there the court held that "trial efficiency and the interests of justice strongly support transfer to Florida" where there was a related action. Id. at *6.

Plaintiffs deliberately chose this jurisdiction for an improper purpose.  Moreover, Plaintiffs again mischaracterize the cases PNC cited to support its arguments.  In Rindfleisch v. Gentiva Health Sys., Inc., 752 F. Supp. 2d 246, 252 (E.D.N.Y. 2010), the court held that there is an inference of forum-shopping when "the selected forum has little or no connection with the parties" (emphasis added).  Similarly, in Ward v. Fluor Enters., Inc., No. 10-04361, 2011 WL 778720, at *2-3 (N.D. Cal. Mar. 1, 2011), a case cited in PNC's opening brief for this issue which Plaintiffs failed to address, the court noted that one of the plaintiffs worked in the chosen forum for a portion of his employment, but still found that there was an inference of forum-shopping because that was the only connection the plaintiffs had to the forum.  Thus, evidence that Plaintiffs have engaged in forum shopping does, in fact, diminish any deference that might otherwise apply to their chosen forum.  Moreover, Plaintiffs appear to concede that their choice of forum is entitled to less deference because they chose to file a nationwide collective action.  See Pls' Br. at 9.  As a result, and for the reasons discussed in Defendants' opening brief, the Court should not defer to Plaintiffs' choice of forum.  See Defs' Br. at 12-13.

      **D.**     **Transfer to the Eastern District of New York Would Be Equally As Inefficient And Confusing.**

Plaintiffs argue in the alternative that if transfer is ordered, this case should be transferred to the Eastern District of New York rather than the Western District of Pennsylvania.  Although the Eastern District of New York may have a slightly greater connection to this case than does the Southern District, given that all of the Plaintiffs worked there, it would still cause significant confusion and inefficiency if there were two putative nationwide collective actions litigating the same issues at the same time.  As explained in PNC's opening brief, the existence of an identical, nationwide off-the-clock collective action claim in Bland weighs determinatively in favor of transfer to the Western District of Pennsylvania.  Defs' Br. at 6-9.  Absent transfer, entirely

7

duplicative discovery and motions practice will ensue in both actions, with potentially conflicting rulings on important issues like the scope of discovery and conditional certification. Witnesses and putative collective action members could receive conflicting communications and notices concerning the two lawsuits, and they also could be subjected to duplicative discovery in both actions. Significant confusion among the collective action members would be a certainty. This is exactly the confusion and inefficiency that Section 1404(a) is designed to prevent, and it exists regardless of whether this action is litigated in this District or the Eastern District of New York. In both cases, the Western District of Pennsylvania is the decidedly more convenient and efficient forum in which this action should be litigated alongside the Bland action.

### III. CONCLUSION

For the aforementioned reasons, Defendants respectfully request that the Court grant their Motion and transfer this action to the Western District of Pennsylvania.

Dated: September 23, 2015

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

/s/ *Sarah E. Bouchard*
Sarah E. Bouchard (*Pro Hac Vice*)
1701 Market Street
Philadelphia, PA  19103
215-963-5077
215-963-5001 (fax)
sbouchard@morganlewis.com

Melissa D. Hill
101 Park Avenue
New York, NY  10178
212.309.6318
212.309.6001 (fax)
melissa.hill@morganlewis.com

*Attorneys for Defendants*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that copies of Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Transfer Venue to the Western District of Pennsylvania Pursuant to 28 U.S.C. § 1404(a) and Declaration of Sarah E. Bouchard and supporting exhibits, were electronically filed with the Court and served via its ECF/CM system on September 23, 2015 upon the following:

>Hope Allison Pordy
>SPIVAK, LIPTON, WATANABE, SPIVAK & MOSS LLP
>1700 Broadway, Suite 2100
>New York, NY  10019
>hpordy@spivaklipton.com
>
>*Attorneys for Plaintiffs*

>*s/ Sarah E. Bouchard*
>Sarah E. Bouchard